## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## BATESVILLE DIVISION

**CLAYTON O. ELLIOT**                                                **PLAINTIFF**
**ADC #145989**

**V.**                          No. 1:19-CV-57-DPM-ERE

**MARJORIE HALL,** *et al.*                                  **DEFENDANTS**

## RECOMMENDED DISPOSITION

### I.    Procedures for Filing Objections

This Recommendation for dismissal has been sent to United States District Judge D. P. Marshall Jr. Any party may file objections if they disagree with the findings or conclusions set out in the Recommendation. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be filed within 14 days. If parties do not file objections, they risk waiving the right to appeal questions of fact. And, if no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing the record.

### II.    Introduction

Clayton O. Elliot, an inmate at the Randall Williams Correctional Facility of the Arkansas Division of Correction ("ADC"), filed this *pro se* action under 42 U.S.C. § 1983, claiming that he received inadequate medical care for an injury he

sustained at ADC's North Central Unit ("NCU") on July 5, 2018.

The remaining defendants,[1] Health Services Administrator Marjorie Hall and healthcare provider Dr. Marty Hearyman, filed a motion for summary judgment (*Docs. 73, 74, 75*), and Mr. Elliot has filed a response in opposition (*Docs. 87, 88, 89*). After careful consideration, and for reasons that follow, the Court recommends that summary judgment be granted in Defendants' favor.

## III.    Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must come forward with 'specific facts showing a genuine issue for

---

[1] The Court previously dismissed several defendants and claims for failure to exhaust administrative remedies but found that Mr. Elliot had exhausted and could proceed with the claims addressed in this Recommendation. *Doc. 49*.

trial. *Id*. at 587. "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995).

## IV.   Background

Mr. Elliot charges that from July 5, 2018 through September 25, 2018, Ms. Hall and Dr. Hearyman were deliberately indifferent to his serious medical needs. The relevant, undisputed facts follow.[2]

On July 5, 2018, Mr. Elliot went to the NCU health office after an inmate hit him in the face. *Doc. 75-1 at 1*. Nurse Crystal Boyce noted that Mr. Elliot's right cheekbone had an "obvious deformity" compared to his left, and he had a cut above his bruised right eye. *Id*.   Nurse Boyce contacted Dr. Hearyman by phone, and he ordered Tylenol #3 for pain, overnight observation in the infirmary, and x-rays the next morning, followed by a CT scan if the x-rays revealed a fracture. *Id*.

The next morning, an NCU nurse noted that Mr. Elliot's pain was under control, but his right eyelid was swollen, bruised, and lacerated. *Id. at 3*.  A facial exam revealed "tenderness below eye and asymmetrical appearance" but "no

---

[2] The undisputed facts are taken from the parties' corresponding statements of facts and attached exhibits (*Docs. 75, 88, 89).* See Local Rule 56.1 (describing requirement to file separate statements of material fact when moving for or opposing summary judgment).

3

swelling below the eye." *Id. at 3*. Facial x-rays were taken, and a radiology report dated July 6, 2018 at 9:52 a.m. recorded the following:

> Results: The osseous structures are unremarkable including grossly intact orbital rims. Maxillary sinuses are opacified. No blowout fracture seen.
>
> Conclusion: Bilateral maxillary sinusitis.

*Id*. at 2.

 After reviewing the radiology report, Defendant Hearyman released Mr. Elliot to his barracks with a 30-day prescription for a lower-tier bunk and directions to continue his pain medication (Tylenol #3) and report for follow-up sick calls as needed. *Id. at 3*.

On July 11, 2018, Mr. Elliot had an appointment with Dr. David B. Warner, an ophthalmologist at the Jones Eye Clinic at the University of Arkansas for Medical Sciences ("UAMS"). The appointment had been scheduled for a recheck of a preexisting corneal ulcer in Mr. Elliot's left eye, which was unrelated to the right-eye injury he sustained on July 5, 2018. *Id. at 4-16*. Dr. Warner's progress notes state that Mr. Elliot's corneal ulcer had improved, but he had been hit in the right eye six days before, which shattered his glasses. *Id. at 8*. Dr. Warner noted that the external area around Mr. Elliot's right eye was swollen and discolored and he had several superficial corneal lacerations in various stages of healing. *Id. at 12.*

Dr. Warner  scheduled a follow-up appointment for a "cornea check" on July

18, 2018 (*Id. at 4, 15*), but he made *no written observations or recommendations regarding a facial injury*. *Id*. The next day, Dr. Hearyman generated a consult request for the July 18 follow-up appointment recommended by Dr. Warner. *Id. at 17-18*.

On July 13, an NCU nurse saw Mr. Elliot after he submitted a sick call. *Id. at 23*. He requested new glasses, complained of eye pain, and stated that he wanted to follow up on his x-ray results. *Id*. The nurse referred Mr. Elliot's inquiries to Dr. Hearyman. *Id.*

Mr. Elliot kept his appointment with Dr. Warner on July 18. The Jones Eye Clinic "after visit summary" lists no additional details about Mr. Elliot's right eye or a facial injury. *Id. at 19-21*. The summary states that the issues addressed were: "ulcer of left cornea, myopia of right eye, and corneal laceration of right eye" and that Mr. Elliot had a follow-up appointment for July 31, 2018. *Id*.

On July 19, 2018, Dr. Hearyman saw Mr. Elliot pursuant to his July 13 sick call referral. *Id. at 23*. The two discussed Mr. Elliot's July 6 x-rays and radiology report, and Dr. Hearyman generated a consult request for Mr. Elliot's July 31 follow-up appointment with Dr. Warner. Id. at 17-18.

On July 31, Mr. Elliot returned to Dr. Warren, who scheduled a maxillofacial CT scan for August 22, 2018. *Id. at 28-32*. Jones Eye Clinic's "after visit summary" provides no indication as to why Dr. Warner ordered the CT scan, but it lists "right

eye injury, subsequent encounter" among the issues addressed during the appointment. *Id. at 28*. Dr. Hearyman generated a consult request for the CT scan ordered by Dr. Warren. *Id. at 34-35*.

On August 4, 2018, Mr. Elliot appeared for a "chronic care visit" at the NCU health services office, and the dosage for his continuing prescription for gabapentin was increased. *Id. at 33*. Notes from the visit state that Mr. Elliot reported that a CT scan had been scheduled for his right eye, and no additional information was recorded concerning his July 5 injury. *Id*.

A CT scan of Mr. Elliot's maxillofacial area proceeded as scheduled, and a specialist reviewed the results on August 27, 2018. *Id. at 36-37*. Completely at odds with the July 6 radiology report, the CT report documented a "significantly displaced right tripod fracture." *Id. at 37*. NCU did not receive the CT report until September 20, 2018. *Id. at 36, 40*.

On September 4, 2018, prior to Dr. Hearyman's receipt of the CT report, he saw Mr. Elliot in response to a sick call. Mr. Elliot complained of back, neck, and foot pain, and Dr. Hearyman noted that he made additional complaints, too numerous to list. *Id. at 38*. Dr. Hearyman wrote: "I tried to help [Mr. Elliot] understand that we cannot address all of them today, but he continued to . . . bring up new ones and ruminate over complaints that were already addressed and [a] plan discussed." *Id*.

On September 20, 2018, NCU received the CT report documenting Mr. Elliot's right tripod fracture. *Id. at 36, 40*. The same day, Dr. Hearyman entered a consult request for Mr. Elliot to see an ear, nose, and throat ("ENT") specialist at UAMS, and an NCU scheduler called UAMS and requested the appointment. *Id. at 42*. Following instructions from UAMS, the scheduler transmitted Mr. Elliot's patient records and waited for UAMS to call back with an appointment date. *Id. at 42*.

Dr. Hearyman saw Mr. Elliot on September 25, 2018, and they discussed several topics, including Mr. Elliot's lower back problems and "his recent CT of face and pending ENT [appointment]." *Id. at 47*.

On October 8, 2018, UAMS contacted the NCU scheduler, stating that Mr. Elliot's ENT appointment was scheduled for December 20, 2018 and that there was no emergent need for an earlier appointment. *Id. at 42*. Dr. Hearyman agreed with UAMS's assessment and approved the appointment date. *Id*.

Due to ADC transportation issues, Mr. Elliot's appointment with the ENT specialist was rescheduled for January 31, 2019. *Id*. An entry in Mr. Elliot's patient records states: "Per Dr. Hearyman, patient has no emergent need at this time and is ok to wait for an appointment date." *Id*.

## V.    Discussion

Mr. Elliot contends that Dr. Hearyman and Ms. Hall demonstrated deliberate

7

indifference to his serious medical needs in several respects. First, he faults Dr. Hearyman for failing to send him to an outside hospital on July 5, 2018 and claims that he had "no plan of care" after Nurse Boyce relayed that he had a deformed cheekbone. *Doc. 87 at 2-3.* Second, he claims that his facial fracture was obvious from his outward appearance, and Dr. Hearyman and Ms. Hall refused to examine him and erroneously relied on false-negative facial x-rays. *Doc. 87, at 3-5.* Third, he claims that he received inadequate pain medication. *Doc. 87 at 7.* Fourth, he claims that Ms. Hall failed to intervene and provide him appropriate medical care.

The "deliberate indifference to serious medical needs of prisoners constitutes 'the unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted). Deliberate indifference in this context has objective and subjective components; a prisoner must show: (1) that he suffered from objectively serious medical needs; and (2) that prison officials knew of, but deliberately disregarded, those serious medical needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

Defendants do not question that Mr. Elliot's right tripod fracture qualifies as an objectively serious medical need. They contend that summary judgment is proper because Mr. Elliot cannot show that Dr. Hearyman's medical treatment or Ms. Hall's administrative actions constituted deliberate indifference to his serious medical needs.

8

Defendants submit the declaration of Chris Horan, M.D., the regional director of Wellpath LLC, the contracted healthcare provider for ADC inmates. *Doc. 75-2 at 1*. Dr. Horan is a licensed physician, who previously practiced emergency and family medicine for more than a decade. *Id. at 1*. He has reviewed Mr. Elliot's relevant medical records and provides his medical opinions about the medical care he received.

Dr. Horan concludes that Dr. Hearyman's initial orders for Tylenol #3, overnight observation, and x-rays the next morning (and a CT scan if the x-rays revealed a fracture) were appropriate. He states that until Dr. Hearyman received the positive CT results, he appropriately relied on a radiologist's opinion that Mr. Elliot had no facial fractures. Dr. Horan explains that a tripod fracture involves the orbital rim and wall and the maxillary sinus, and the radiology report found "intact orbital rims" and did not indicate a fracture in the tripod or other facial area. *Id. at 4*. Dr. Horan observes that after Dr. Hearyman received the CT results, he immediately and properly entered a consult request for an ENT specialist. *Id*. at 4.

Dr. Horan notes that after Dr. Hearyman requested an ENT appointment, UAMS specialists reviewed Mr. Elliot's records, "and *they* made the medical decision that there was not emergent need for Mr. Elliot to be seen be the ENT." *Id*. at 5. Dr. Horan finds no fault with Dr. Hearyman's concurrence with UAMS specialists that Mr. Elliot did not require an immediate ENT appointment. *Id*.

Dr. Horan concludes that throughout the relevant period, Mr. Elliot had adequate pain medication. He notes that Mr. Elliot had an existing prescription for gabapentin, which would assist with facial nerve pain, and after his initial prescription for Tylenol #3 expired, he had a high-dose prescription for ibuprofen, sufficient to treat pain associated with his tripod fracture. *Id*. at 5.

Finally, Dr. Horan observes that Ms. Hall was not directly involved in Mr. Elliot's medical care, and she did not have the authority to override Dr. Hearyman's decisions about Mr. Elliot's medical treatment. *Id*.

## A.    Lack of Initial Care Plan

The undisputed facts show that Dr. Hearyman ordered an initial care plan that included pain medication, overnight observation, and x-rays. Mr. Elliot's quarrel with that plan fails to create a fact question as to deliberate indifference. "Deliberate indifference may be found where 'medical care [is] so inappropriate as to evidence intentional maltreatment.'" *Fourte v. Faulkner Cty., Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Smith v. Jenkins,* 919 F.2d 90, 92 (8th Cir.1990)). Mr. Elliot "must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (*quoting Estate of Rosenberg v. Crandell,* 56 F.3d 35, 37 (8th Cir.1995)).

### B.     Reliance on Radiology Report

Mr. Elliot maintains that Dr. Hearyman erred in relying on the radiology report because it was obvious that he had a facial fracture. He argues that Dr. Hearyman should have personally examined his disfigured face to "see what . . . a lay person could see [was] broken bones . . .  "[3] *Doc. 87, at 5.*

According to Mr. Elliot, when Nurse Boyce assessed his injury on July 5, she stated, "My God Elliot[,] your cheekbone is broke." *Doc. 89 at 3.*  He claims that his facial fracture was so obvious from outward appearance that on July 11, Dr. Warner told him "there was no doubt" that his facial bones were broken, and he needed a "professional in bones." *Doc. 88 at 7-8.*  By affidavit, Mr. Elliot testifies: "Dr. Wagner said he would get me a [CT scan and] make sure I got to see a bone specialist [and] that he would help me seeing's how . . . Dr. Hearyman [and] Marjorie Hall was denying me the medical help I needed." *Doc. 88 at 21* .

Contrary to Mr. Elliot's recollection, neither Nurse Boyce's notes from July 5 nor Dr. Warner's progress notes from July 11 indicate that either medical care provider suspected from sight alone that Mr. Elliot had a facial fracture.  On July 11, Dr. Warner wrote that Mr. Elliot's chief complaint was sharp pain and pressure in both eyes, and under  "review of symptoms," he noted positive symptoms for a

---

[3] Mr. Elliot notes that the radiology report included the following statement: "THIS REPORT IS BASED SOLELY UPON THE RADIOGRAPHIC EXAMINATION. CORRELATION WITH THE CLINICAL EXAMINATION IS ESSENTIAL." *Doc. 75-1 at 2.*

corneal ulcer and negative symptoms for "musculoskeletal" and other issues. *Doc. 75-1 at 8.*

Similarly, Dr. Warner's progress notes from July 18 contain no information about Mr. Elliot's facial injury. *Id. at 19-21.* In fact, the record contains no documentary evidence that Dr. Warner made *any* observations regarding the external appearance of Mr. Elliot's face. In any event, Mr. Elliot offers out-of-court statements by Nurse Boyce and Dr. Warner to prove that his facial fracture was obvious, and he cannot rely on hearsay to avoid summary judgment. *Brooks v. Tri-Sys., Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005) ("When an affidavit contains an out-of-court statement offered to prove the truth of the statement that is inadmissible hearsay, the statement may not be used to support or defeat a motion for summary judgment.").

Nothing in the record indicates that Dr. Hearyman's decision to treat Mr. Elliot consistently with the radiology report was inappropriate or amounted to intentional maltreatment. And given Dr. Horan's medical opinion that Dr. Hearyman's course of treatment was appropriate, Mr. Elliot's disagreement fails to create an issue for trial. *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate

treatment.").

Finally, to the extent that Mr. Elliot claims that a delay in receiving a CT scan or seeing an ENT specialist amounted to the deprivation of constitutionally required medical care, his claim fails. "When an inmate claims that a delay in medical care violates the Eighth Amendment, 'the objective seriousness of the deprivation should also be measured by reference to the *effect* of the delay in treatment.'" *Redmond v. Kosinski*, 999 F.3d 1116, 1121 (8th Cir. 2021) (quoting *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (emphasis in original). "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that these delays adversely affected his prognosis." *Id.* (quoting *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011)). Here, Mr. Elliot submits no evidence showing that a delay in his receipt of medical care adversely affected his prognosis.

### C.    Inadequate Pain Medication

Mr. Elliot argues that Dr. Hearyman failed to provide him adequate pain medicine. *Doc. 87 at 7.* He states that he has taken gabapentin since 2012 for diabetic nerve pain and ibuprofen since 2009 for back pain, and neither medicine "would come close to treating the tripod fracture pain [he] was going through." *Doc. 87 at 7.*

In Dr. Horan's medical opinion, Dr. Hearyman prescribed adequate pain

13

medication for Mr. Elliot. *Doc. 72-5 at 6*.  Immediately after he was injured, Mr. Elliot received Tylenol #3, and Dr. Horan concludes that when that prescription expired, gabapentin and ibuprofen were adequate to treat his pain. *Id. at 5*. Mr. Elliot's disagreement with Dr. Hearyman's medical decisions on appropriate pain medication is not sufficient to create a material question of fact on the issue of deliberate indifference. It is well settled that a prisoner's "mere disagreement" with a medical provider's prescribed course of treatment is insufficient to establish a deliberate indifference claim.  *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010); *Dulany v. Carnahan*, 132 F.3d 1234, 1239-40 (8th Cir. 1997).

### D.    Defendant Hall

Mr. Elliot sues Ms. Hall because she signed each of his medical grievances and was therefore "very much aware of his medical needs [but] did nothing." *Doc. 88 at 1*.  He contends that when she read his grievances, she should have intervened and personally examined his face (*Doc. 88 at 4*, *10*).  But Ms. Hall's role was that of a health services administrator, not a medical provider responsible for treatment decisions.

Mr. Elliot does not explain how Ms. Hall, in her administrative capacity, took action that amounted to deliberate indifference to his serious medical needs. Her involvement was limited to reviewing and denying Mr. Elliot's grievances, which is not a sufficient basis for imposing liability for the denial of medical care in violation

14

of the Eighth Amendment. See *Rowe v. Norris*, 198 F. App'x 579, 580 (8th Cir. 2006) (noting that participation in the grievance process alone is insufficient to establish liability under § 1983); *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.").

After careful consideration, the Court finds no genuine issues for trial on Mr. Elliot's remaining deliberate indifference claims against Dr. Hearyman and Ms. Hall.

## VI.    Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.    Defendants' motion for summary judgment *(Doc. 73)* be GRANTED, and Plaintiff's remaining claims be DISMISSED WITH PREJUDICE.

2.    Because all claims asserted by Plaintiff in his complaint *(Doc. 2)* have now been resolved, final judgment be entered, and the case closed.

DATED this 2nd day of November, 2021.

_____
UNITED STATES MAGISTRATE JUDGE